IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Savon Davis,  Case No. 3:20-cv-00250-JGC

      Plaintiff,

v.  **ORDER**

Jori Anderson,

      Defendant.

Plaintiff Savon Davis is a prisoner incarcerated in the Toledo Correctional Institution ("ToCI"). In this action, he asserts that defendant Jori Anderson, ToCI's medical health administrator, failed to provide appropriate medical care for his mental illness. He pleads a claim for an Eighth Amendment violation and a state-law medical malpractice claim. Davis' complaint seeks damages; it does not seek injunctive relief.

Pending is defendant Anderson's Motion to Dismiss for Failure to State a Claim. (Doc. 38). The motion is fully briefed and ripe for decision. *See* (Docs. 41, 43). For the reasons stated below, I grant defendant's motion.

## Background

In his Third Amended Complaint, (Doc. 37), Davis alleges that, "for years," he has suffered from "several mental health conditions" for which he receives medication and "some mental health services" from ToCI. (*Id.* 155). His complaint alleges that his mental health condition has caused him to engage in a series of suicide attempts. (*Id.* ¶¶ 8-27).

In 2017, Davis alleges, "[a]t various times," he inflicted "serious injuries" on himself. He mentions two instances in which he cut himself, one of which, he alleges, required his hospitalization in an outside medical facility. (*Id.* ¶ 8). Davis alleges "upon information and belief, defendants [sic] approved and/or acquiesced in ToCI staff, employees, and/or agents issuing conduct violation tickets to plaintiff . . ." for his self-harm. (*Id.* ¶ 9).

On January 22, 2018, Davis requested mental health treatment, stating that he was going through a "rough patch." (*Id.* ¶ 11). He alleges that Anderson's response "through Ms. Jedlewinski,"[1] was that facility's mental health staff were unable to accept any new patients at that time. (*Id.* ¶ 11). Jedlewinsky also told Davis "[l]et me know when you are going through a bad patch so I can bump up your appointment to an earlier date." (*Id.*).

Davis alleges that "[t]hroughout 2018 plaintiff continued with inflicted self-harm, sometimes requiring stitches, attempting suicide, refusing to take his medications, agreeing to take his medications, reporting to mental health he was contemplating suicide or self-harm, and frequently asking for help." (*Id.*). He alleges, "on information and belief," that "defendant and her staff felt [Davis] was being manipulative through the self-harm conduct." (*Id.*).

More specifically, Davis states that "[o]n March 26, 2018, [he] was found with a noose around his neck, standing on the top bunk in his cell, stating that he was going to kill himself." (*Id.* ¶ 12). On March 27, 2018, Davis allegedly cut himself, although the cut did not require stitches. (*Id.* ¶ 13).

On March 28, 2018, Licensed Independent Social Worker, Matthew Materni conducted an assessment of Davis' mental health. (*Id.* ¶ 14). Davis alleges that Materni's notes reflect that

---

[1] The complaint provides no information regarding Ms. Jedlewinsky, so it is impossible to ascertain whether she was a physician, nurse practitioner, counselor, or administrative staff.

prison officials had placed Davis on suicide watch seventeen times and that he had a significant history of self-harm in prison. (*Id.*). He asserts that Materni "did not see that [Davis'] actions represented genuine suicidal ideation." (*Id.*). Davis alleges that "defendant['s] approved treatment based on that assessment was to place [him] on 'close watch,'" although he states that he "was released" from close watch later that day. (*Id.*).

On March 29, 2018, Davis alleges, he "attempted to drown himself in his cell." (*Id.* ¶ 15). Two days later, Davis alleges, he announced that he was on a hunger strike. (*Id.*).

On March 31, 2018, Davis met with Anderson's "mental health staff." (*Id.* ¶ 16). He alleges regarding that meeting that "the same statements [we]re made" regarding his history of self-harm and being placed on suicide watch as those made by Materni but that the mental health staff again "'did not see that [Davis'] actions represented genuine suicidal ideation.'" (*Id.*). He asserts that "defendant and her staff felt plaintiff was being manipulative through the self-harm."[2] (*Id.*).

On April 10, 2018, Davis met with Certified Nurse Practitioner Cheryl Lee. (*Id.* ¶ 17). Lee allegedly determined that Davis' mental health "was deteriorating." Davis states that Lee "acknowledged that he had made suicide attempts in 2013 and 2014." (*Id.*). Davis asserts that "defendant's staff" diagnosed him as having an anti-social personality disorder. (*Id.*).

During the meeting, Davis requested medication to help with his depression. (*Id.* ¶ 18). Lee agreed and prescribed medication. (*Id.*). Prison authorities then returned Davis to his cell in the prison's general population. Davis alleges that "[n]othing further action [sic] was planned by defendant or her staff for treating the recently diagnosed anti social personality disorder." (*Id.*).

---

[2] It is unclear why Davis felt the need to qualify this statement in his complaint regarding the mental-health staff's thinking as based on information in belief in paragraphs 11 and 19 but asserted it as a fact in paragraphs 16 and 22.

3

Nevertheless, Davis also states that he "met with defendant Anderson's mental health staff regularly and complied with medication throughout much of April." (*Id.* ¶ 19). However, on May 7, 2018, he attempted to cut his throat and was placed on close watch again. Davis alleges that he "met with defendant Anderson's mental health staff every few days then returned to scheduled treatment sessions every ninety days, with instructions to seek out help when needed." (*Id.*).

Davis alleges that he began cutting himself again in July 2018. He states that, on September 19, 2018, he "cut himself and took several pills." (*Id.*). Davis alleges that "[h]e was issued a rule violation for self-harm, but not provided any further treatment, evaluation, plan of action or referred [sic] for psychiatric treatment." (*Id.*). He again states, "on information and belief," that "[d]efendant and her staff felt plaintiff was being manipulated through the self-harm conduct." (*Id.*).

During 2019, Davis alleges, he asked his mental health liaison for treatment for his worsening condition but "nothing came of these requests." (*Id.* ¶ 21). Davis pleads, "on information and belief," that the liaison "informed defendant Anderson" about his requests. (*Id.*).

On June 28, 2019, Davis states that he cut himself several times with a razor blade. (*Id.* ¶ 22). ToCI's medical staff treated his injuries and then issued him a rules violation ticket. (*Id.*).

In July 2019, Davis alleges, he attempted to hang himself. (*Id.* ¶ 23.). He states that "defendant and her staff's, employees, agents [sic] responses" were to issue a rules violation and place him on close watch. (*Id.*).

On August 9, 2019, Davis was hospitalized due to cutting injuries he suffered when allegedly attempting to commit suicide. (*Id.* ¶ 24). He had been in segregation at the time. *See* (*Id.* ¶¶ 23-24). Upon his return to ToCI, Davis alleges that he spoke with Anderson and informed

4

her that he still felt suicidal. He asserts that Anderson "would not place him on suicide watch and she instructed the staff to remove him from suicide watch." (*Id.*). Davis states that he then attempted suicide again by cutting himself, although he required only stitches. (*Id.*).

Davis alleges that, after Anderson removed him from suicide watch, he refused to return to his cell in general population. He asserts that he did so because he knew that, when he was in general population, he could gain access to razor blades. (*Id.*). Davis then "was put in segregation." (*Id.*). In marked contrast, however, Davis alleges that on June 28, and August 9, 2019, he cut himself with a razor blade while he was in segregation. (*Id.* ¶¶ 22-24).

Sometime "[l]ater in 2019," Davis met with the Warden and Deputy Warden to request further mental health treatment but, he alleges on "information and belief," that they informed him there was nothing more they could do to help him. (*Id.* ¶ 26). He also alleges, however, that "Defendant Anderson through her staff informed [him] that mental health did have open office hours during the week and he could make use of that." (*Id.* ¶ 27). Davis asserts that those hours were insufficient for his needs because they were limited to 8:00 a.m. to noon, and treatment sessions were limited to fifteen minutes. (*Id.*).

Davis states that "Defendant's mental health staff, employees and/or agents did not believe [he] suffered from serious mental illness other than depression. They assessed his cutting, attempted suicides, [and] hunger strikes as being manipulative only and used rules violations and segregation as a means to punish his perceived manipulative behaviors." (*Id.* ¶ 29).

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

When considering a Rule 12(b)(6) motion, I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555.

"Although for the purposes of a motion to dismiss [I] must take all of the factual allegations in the complaint as true, [I am] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal, supra*, 556 U.S. at 678. "[T]he sufficiency of a complaint turns on its 'factual content,' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Iqbal*, *supra*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P.. 8(a)(2)).

## Discussion

Anderson seeks summary judgment on the grounds that: 1) the Third Amended Complaint fails to meet *Iqbal/Twombly* pleading standards because, *inter alia*, it fails to sufficiently allege that Anderson was involved personally in the acts giving rise to Davis' claim;

2) the complaint seeks to impose *respondeat superior* liability, when that theory does not apply to claims under 42 U.S.C. § 1983; 3) the Eleventh Amendment bars recovery of damages for acts undertaken in the defendant's official capacity; 4) the complaint fails substantively to state a claim under the Eighth Amendment; and 5) qualified immunity bars Davis' claim against her in her personal capacity. I agree with each of her contentions.

1. **The Complaint Fails to Comply with *Iqbal/Twombly***

   A. **Failure to Allege Wrongful Conduct Anderson Personally Committed**

Anderson is the only defendant in this case. Yet, with the single exception of paragraph twenty-four, the complaint fails to identify any action that Anderson took personally that injured him. In that paragraph, Davis alleges that, when he returned from the hospital in August 2019, Anderson "instructed the staff to remove him from suicide watch." (Doc. 37, ¶ 24). The complaint contains no factual allegations to show that Anderson's single alleged act provides any basis for imposing liability on her.

   B. **Allegations Made on Information and Belief**

Even Davis' identification of Anderson is insufficient. He alleges "upon information and belief" that she "is the mental health administrator at ToCI and has been throughout the time giving rise to plaintiff's allegations." (*Id.* ¶ 2).

Davis also alleges other essential facts based upon his own information and belief. *See, e.g.*, (*id.* ¶ 9) (alleging upon information and belief that Anderson "approved and/or acquiesced in" prison authorities issuing conduct violation tickets to him); (*id.* ¶¶ 11, 19 ) (information and belief allegation that Anderson and her staff felt Davis was acting manipulatively); (*id.* ¶ 21) (information and belief allegation that Davis' mental health liaison informed Anderson of his

7

treatment requests); (*id.* ¶ 7) (information and belief allegation that the Warden and Deputy Warden told him there was nothing more they could do to help him).

Allegations based on information and belief are insufficient to support a claim. "To survive a motion to dismiss, a complaint must plead 'facts' that create a "plausible inference" of wrongdoing. "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (internal citation omitted). Allegations based on information and belief "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship, supra*, 727 F.3d at 506.

Therefore, I will not consider any of Davis' allegations made on information and belief.

### C. Conduct Committed by Anderson's Staff

Davis also cannot state a valid § 1983 claim against Anderson by attributing alleged wrongdoing to "Defendant and her staff's, employees, agents" [sic]. (Doc. 37, ¶ 23). Nor can she do so based on her allegations that particular staff members took wrongful action against her. *See, e.g.*, (*id.* ¶¶ 9, 11, 14, 16-19).

"'[T]o establish liability under section 1983, against an individual defendant, [the] plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint.'" *Slusher v. Carson*, 488 F. Supp. 2d 631, 638 (E.D. Mich. 2007) (quoting *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991)). "It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by [ ] each of the named defendants." *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004); *see also Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court

has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.") (emphasis added).

With only limited exceptions, the complaint identifies the actions of prison officials in passive voice. As a result, there are only limited occasions where it attributes allegedly wrongful conduct to any specific individual.

As discussed above, only one of those instances states any conduct that Anderson, herself, committed. If Davis claims that Anderson took actions that injured him, he was required to identify that conduct with reasonable particularity and to plead facts "that allow[] the court to draw the reasonable inference that [Anderson] is liable for the misconduct alleged." *Twombly, supra*, 556 U.S. at 678.

Davis' complaint fails to state any factual basis that would allow me to draw that inference. Without even a well-pled allegation that Anderson was the prison's "mental health administrator," Davis' Eighth Amendment claim is not plausible. In addition, without pleading a sufficient factual basis to show that that Anderson engaged personally in wrongful conduct that injured Davis, he has not stated a plausible claim against her. That failure requires that I dismiss the complaint.

### 2. *Respondeat Superior* Liability for Section 1983 Claims

Davis' complaint seeks to hold Anderson liable for the conduct of her staff members. In this § 1983 action alleging an Eighth Amendment violation, she cannot do so. "[Section] 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement is required for a supervisor to incur personal liability. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.,* 69 F.3d 76, 80–81 (6th

9

Cir. 1995)). Thus, none of the conduct Davis alleges that anyone other than Anderson committed can serve as any support for his § 1983 claim against her.

### 3. Eleventh Amendment Immunity

Davis has sued Anderson in both her personal and official capacities. (Doc. 37, ¶ 2). His claims against Anderson in her official capacity are not tenable.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169, (1985). "'An official can . . . be sued in his *official* capacity. But an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver . . . .'" *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (alterations in original) (quoting *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)). This is because a plaintiff who sues a state agent in his or her official capacity "seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Id.*

Ohio has not waived its sovereign immunity from civil rights lawsuits in federal court. *Regenold v. Ohio State Bd. Of Educ.*, No. 2:21-CV-1916, 2021 WL 2895130, at *3 (S.D. Ohio) (citing *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999)). And "Congress did not abrogate states' Eleventh Amendment immunity through § 1983." (*Id.*) (citing *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).

Accordingly, I dismiss all claims made against Anderson in her official capacity.

### 4. Failure to State a Valid Eighth Amendment Claim.

Davis cannot state an Eighth Amendment claim by alleging Anderson was negligent in her medical care for him. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir.1995). "[M]edical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Estelle, supra*, 429 U.S. at 106; *see Harrison v. Ash,* 539 F.3d 510, 522 (6th Cir.2008).

Instead, "when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Miller, supra*, 408 F.3d at 819).

Here, the complaint itself reflects that Davis received significant mental health treatment. Davis alleges that "[h]e receive[d] medication and some mental health services from ToCI mental health services and ToCI medical services." (Doc. 37, ¶ 7).

The complaint alleges that, on one occasion when Davis requested help, stating that he had been going through a "rough patch," a ToCI mental health provider instructed him to let her know when rough patches arose so that she could move up his scheduled appointments. (*Id.*).

After he had committed multiple incidents of self-harm and alleged suicide attempts in March 2018, he met with a Licensed Independent Social Worker on March 28, 2018, (*id.* ¶ 14), and met with ToCI "medical health staff" the next day, (*id.* ¶ 16.).

On April 18, 2018, he met with a ToCI Certified Nurse Practitioner, who adjusted his medication. (*Id.* ¶ 17). Davis acknowledges in the complaint that he did not consistently comply with taking his medications. (*Id.* ¶ 11).

Davis "met with Anderson's mental health staff regularly and complied with medication through much of April . . . ." (*Id.* ¶ 19). After this period, Anderson acknowledges, he had regularly scheduled mental health treatment appointments every ninety days, (*Id.* ¶ 19). He concedes that the staff informed him that, if he needed help in the interim, he should seek out

11

help during the prison's open mental health treatment office hours. Those open periods lasted four hours each day, although interim appointments only lasted fifteen minutes. (*Id.* ¶ 27).

Thus, Davis' complaint demonstrates that he received substantial medical treatment. His claim is that "[f]or the most part for plaintiffs and his needs, these services were insufficient." (*Id.*).

Davis' opinion that ToCI provided inadequate care is insufficient to state an Eighth Amendment claim for deliberate indifference. "[A] difference of opinion between [an inmate] and the prison health care providers and a dispute over the adequacy of [the inmate's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Williams*, 32 F. App'x 704, 707 (6th Cir. 2002); *see also Rhinehart, supra*, 894 F.3d at 740 ("a desire for additional or different treatment . . . [does not] suffice to support an Eighth Amendment claim." (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)).

Davis' allegation that the services ToCI provided him were insufficient for his needs is not a valid basis for an Eighth Amendment claim. Whether the treatment provided proved successful "is of no consequence to whether the Defendants were deliberately indifferent to a prisoner's serious medical need." *Griffith v. Correcthealth Ky.*, LLC, No. CV 15-5-DLB-EBA, 2017 WL 3749775, at *6 (E.D. Ky.). "Unsuccessful treatment alone does not give rise to . . . an Eighth Amendment violation, even when a physician's treatment could be considered malpractice." *Cousino v. Borgerding*, No. 2:15-cv-187, 2016 WL 7438061, at *2 (E.D. Mich.).

Instead, "when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart, supra*, 894 F.3d at 737

12

(quoting *Miller, supra*, 408 F.3d at 819). "[T]he conduct for which [Eighth Amendment] liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

Here, nothing in Davis' complaint could support a conclusion that ToCI's medical staff's conduct reflected an intent to punish him. Davis' complaint simply fails to present any factual basis on which I could plausibly determine even that Anderson's staff were deliberately indifferent to his needs.

As to Anderson herself, as discussed in Section 1, *supra*, the complaint fails to allege conduct that Anderson committed that reasonably could be considered deliberately indifferent to his needs. Davis alleges that "defendant and her staff" took various actions, *see, e.g.*, (Doc 37, ¶¶ 16, 18, 19, 23, 29), and that Anderson "through her staff" committed various conduct and failed to take other action.

He fails, however, to state any factual basis on which one plausibly could conclude that Anderson participated in the alleged misconduct. He also fails to state any factual basis for his allegations that when Anderson's medical staff took various actions or made various statements to him, their conduct amounted to Anderson acting "through" them.

Moreover, Davis fails to identify any conduct Anderson could have undertaken or any treatment she should have provided that would have prevented or reduced his self-harm episodes.

Thus, Davis has failed to state a valid Eighth Amendment claim against Anderson.

### 5. Qualified Immunity

I also dismiss Davis' claims against Anderson in her personal capacity because I find that she is entitled to qualified immunity.

13

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012). For a state actor to be liable, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

When a state actor raises a qualified immunity defense, it becomes the plaintiff's burden to show that qualified immunity does not apply. *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

It is established law that prison officials owe inmates a duty to provide medical care. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) ("[E]lementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."). However, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."

The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Mullenix, supra*, 577 U.S. at 12 (emphasis in original). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (citation omitted).

As the Court has explained, "[t]he general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the

14

violative nature of particular conduct is clearly established." *Ashcroft, supra*, 563 U.S. at 742. "In all, the most important question in the inquiry is whether a reasonable government officer would have 'fair warning' that the challenged conduct was illegal." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 564 (6th Cir. 2018) (quoting *Baynes v. Cleland*, 799 F.3d 600, 612-13 (6th Cir. 2015)).

To impose § 1983 liability, a plaintiff must show that there is "a 'causal connection' between the defendant's 'active unconstitutional behavior' and the plaintiff's injuries." *Crawford v. Tilley*, 15 F.4th 752, 731-32 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)).

Davis has not alleged any facts to state a plausible allegation that Anderson's sole alleged "active unconstitutional behavior" – her failure to place Davis on suicide watch on one occasion - denied him appropriate medical care or how, if at all, it injured him.

Moreover, to the extent Anderson had knowledge of Davis' condition, apart from the single meeting Anderson participated in, her knowledge could only have come from his treating physicians, *i.e.*, her staff, and the treatment records they created. Davis repeatedly alleges, however, that Anderson's staff believed Davis self-harm and threats of suicide were manipulative and that he suffered from an anti-social personality disorder. (Doc. 37, ¶¶ 11, 16, 17, 19, 22, 29). Anderson also would have been aware that, even before the events Davis complains of here, he had been placed on suicide watch seventeen times for suicidal threats or unsuccessful alleged suicide attempts. (*Id.* ¶ 14).

Davis has not explained how Anderson's alleged decision to rely on her medical staff's opinions that his self-harm was manipulative rather than actual suicide attempts could show the kind of deliberate indifference to his condition that is required to state an Eighth Amendment

15

claim. "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Davis also has not explained how Anderson's alleged reliance on her medical staff's professional opinions demonstrated "obduracy or wantonness." Nor has he cited to any precedent that shows a constitutional requirement that a prison administrator place a prisoner on suicide watch every time he threatens to harm himself, regardless of the number of times he has done so, and despite the opinion of his treating physicians that he had not actually been attempting suicide.

Therefore, he has failed to explain how "every reasonable official would have understood that [not placing such a prisoner on suicide watch] violates" the prisoner's Eighth Amendment rights, *Mullenix, supra*, 577 U.S. at 12 (internal quotation marks omitted). Therefore, Anderson is entitled to qualified immunity.[3]

---

[3] The complaint includes a state-law medical malpractice claim. Although defendant's has moved for summary judgment, she has not briefed any issues relating to this claim. In light of U.S. Supreme court's 2010 decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (if a federal rule of civil procedure "answers the question in dispute," the federal law trumps any contrary state procedural requirement), and the Sixth Circuit's 2019 decisions in *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019) (interpreting *Shady Grove* in a Federal Tort Claim, applying Ohio Medical Malpractice law) and its recent decision in *Kitchen v. Snyder*, No. 20-1936, 2021 WL 4470032, at *5 (6th Cir.) (remanding supplemental Ohio-law medical malpractice claim in light of *Gallivan*; indicating that on remand, District Court could decline to exercise supplemental jurisdiction), it appears entirely appropriate for me to follow the Sixth Circuit's suggestion in *Kitchen* and not decide Davis' state-law claim. Accordingly, I decline to exercise supplemental jurisdiction as to plaintiff's Ohio-law medical malpractice claim.

Accordingly, for the foregoing reasons, it is ORDERED THAT: Defendant's Motion to Dismiss (Doc. 38) shall be, and the same hereby is, GRANTED.

So ordered.

/s/ James G. Carr<br>Sr. U.S. District Judge